AMOS STRONG AND ELIZUR STRONG *v*. HIEL HUNT AND FANNY HUNT, his wife.

The owner of an undivided portion of real estate, whose portion is claimed by another person, without title, is not bound by a partition of the land by the county court between his co-tenant and such other person, in which he has not acquiesced; but the real owners are still to be regarded as tenants in common.

Where there were two tenants in common of real estate, and a third person obtained a deed covering the share of one tenant, supposing he was acquiring a good title thereto, and he entered into possession of the entire premises and made improvements, and subsequently the other tenant brought ejectment against him for his share, and recovered, it was held, that he was entitled to recover, against the plaintiff in ejectment, the amount which the share of the land thus recovered had been improved by the betterments upon the entire tract.

DECLARATION for betterments. The defendants recovered final judgment against the plaintiffs, in an action of ejectment, December Term, 1844, for seventy five acres, undivided, in the third division of the original right of William Reed in Hydepark,—*the lot being called two hundred acres*. The declaration in this case contained two counts,—the first founded upon a quitclaim deed from Darius Fitch to Amos Strong, dated March 11, 1825, conveying the whole of the lot except seventy five acres, undivided,—the *second* founded upon a quitclaim deed from Breed Noyes to Amos Strong, dated September 5, 1834, and conveying seventy five acres of said lot, undivided. Trial by jury, June Term, 1845,—ROYCE, J., presiding.

To show that Fitch had an apparent title to the premises at the time of executing his deed to Strong, the plaintiffs gave in evidence a deed from Abner Flanders, collector of a land tax granted by the legislature, to Fitch, dated February 8, 1825; and they also gave in evidence the deed from Fitch, described in the first count. To support the second count, the plaintiffs gave. in evidence the deed from Breed Noyes, described in that count, and a deed from Abner Flanders, collector of a land tax, reciting a sale of the land July 17, 1834, and purporting to convey seventy five acres, undivided, of the lot. The plaintiffs also gave in evidence the record of a partition of said lot between Samuel A. Willard, administrator of Aaron Farmer, and Amos Strong, made by commissioners appointed by the county court upon the petition of Willard, while the action of eject-ment in favor of the defendants against the plaintiffs was pending, by which there was set off to Strong seventy five acres from the south side of the lot. But it did not appear, that the defendants were parties to this petition, or that they had knowledge of the pro-ceeding.

The defendants gave in evidence a warrantee deed from Aaron Farmer to the defendant Fanny Hunt, then Fanny Phillips, and wife of George Phillips, dated March 7, 1822, conveying seventy five acres of the lot, undivided, and gave evidence tending to prove, that George Phillips and his wife entered upon the lot in 1825, and oc-cupied a part of the seventy five acres in question, and also an ad-joining portion of the lot. The defendants also gave in evidence a quitclaim deed from George Phillips to Breed Noyes & Co., dated April 21, 1831, conveying all his interest in the premises, and a quitclaim deed from Breed Noyes & Co. to the plaintiff Amos Strong, dated February 4, 1832, and conveying the same premises. The defendants also gave evidence tending to prove, that Darius Fitch, in purchasing the land at the collector's sale, was the agent of Aaron Farmer, then the owner of the right of William Reed, and who resided in Connecticut, and that he bid off the land and took the title thereto to secure him for paying the tax thereon, and for a small sum advanced by him for Farmer, in making some improve-ments on the land.

It was proved, that a barn and shed, and the frame of a house, with boards and shingles thereon, had been erected mainly by the

plaintiffs, before any partition was made, as above stated, and that they were, by the partition, left upon the seventy five acres assigned to Strong. The value of the betterments claimed was ascertained by the jury upon view of the premises.

The court charged the jury, that the plaintiffs were not entitled to recover upon the second count in their declaration, because it was the duty of Noyes, or those who then owned the life estate of Phillips, to pay the taxes, on which the title set up in that count was founded. But the court farther instructed the jury, that they were at liberty to find for the plaintiffs to recover, upon the apparent title acquired by the deed from Fitch in 1825, for what they, or either of them, had subsequently made the seventy five acres more valuable to the defendants, who had now recovered the same ; and that they should allow nothing for any betterments made by or un-der Phillips, in his own right, or in that of his wife.

Verdict for plaintiffs.    Exceptions by defendants.

*L. P. Poland* for defendants.

*J. Sawyer* and *D. A. Smalley* for plaintiffs.

The opinion of the court was delivered by

DAVIS, J.   The present defendants having recovered against the plaintiffs in an action of ejectment, in this county, seventy five acres, undivided, of land in Hydepark, being the third division lot of the right of William Reed, which lot is supposed to contain two hundred acres, the latter have filed their declaration on the case to recover of Hunt and his wife, for certain betterments, or improve-ments, made upon the premises by Amos Strong, during his occu-pation of the premises under the quitclaim deed from Darius Fitch, dated March 11, 1825.

This deed conveyed, or quitclaimed, the whole lot, except sev-enty five acres, undivided, which had been deeded March 7, 1822, by Aaron Farmer to his daughter Fanny, wife of George Phillips. Fitch's title rested on a vendue deed from Abner Flanders, collector of a land tax, dated February 8, 1825. This gave an apparent title to Strong to one hundred and twenty five out of two hundred ali-quot portions of the lot, and made him a tenant in common with

Phillips and his wife, who owned seventy five out of two hundred parts. If Strong had disseized his co-tenants by acts inconsistent with this relation, as it seems he did at some period, either before or after the death of Phillips, he, together with Elizur Strong, who acted in subordination to him, were in possession, so as to subject them to an action of ejectment in favor of Hunt and his wife,—she being the same person as Mrs. Phillips. Strong, indeed, from and after February 4, 1832, had an apparent title to the Phillips portion of the lot, by virtue of a quitclaim deed from Breed Noyes, of that date, who had the year before received a similar deed thereof from George Phillips, in which his wife did not join. The rights derived from this source could of course subsist no longer than during the life of Phillips, which terminated soon after, but at what precise time does not appear. The action of ejectment was commenced for this portion of the land, after Mrs. Phillips had intermarried with Hunt, and a recovery was finally had.

To entitle Strong to betterments, it was necessary for him to show, that he, or Noyes, had taken a conveyance, which he supposed to be good, to convey the title and interest therein expressed. On trial of this case, the plaintiffs attempted to show such title,—first, by virtue of the deed from Fitch,—second, by virtue of that from Noyes. As to the last, the presiding judge ruled, that there was no such title, as would sustain a claim for betterments; which was certainly true, if the betterments were made after the termination of the life estate,—and perhaps so, if made before, as he knew his interest must cease on Phillips' death. Be that as it may, no exception was taken to this ruling, and consequently it is not before us.

There seems not to have been any objection made to the introduction by the plaintiffs of evidence shewing the partition between the administrator of Farmer, on the one part, and Strong on the other; and as no instructions were given respecting such evidence, and no exception was taken to its admission, no question is raised on that ground.

We are, however, satisfied, there was error in the charge of the court in respect to the title under the deed from Fitch. The plaintiffs had, under it, no apparent claim to any thing more than the aliquot portion of the third division designated in the deed. At
78

most, the plaintiffs could not be entitled to recover of these defendants a greater portion of the value of the improvements made, than in the proportion of seventy five to two hundred. On what particular portion of the farm the barn, shed and other improvements were made, whether on the seventy five acres on the south side, set off by the partition aforesaid, or on some other part of the lot, was not a matter of any importance ; for the partition being *inter alios,* could not have, and did not have, any effect to prejudice the rights of these defendants. They were still to be regarded as tenants in common with Farmer's administrator, or with Strong. The partition may be laid out of the case,—being between Willard, on the one part, the administrator of Farmer, in whom the title to the lot remained, excepting to the seventy five acres, undivided, conveyed by him to his daughter, at the time of his death,—the sale for non-payment of taxes proving to be invalid,—and Strong, on the other part, whom Willard supposed to have acquired a good title to the seventy five acres, but which the result of the suit, to which this proceeding is an appendage, proved to be a mistake. It could have no effect whatever upon the rights of these defendants, they being no parties to it, and having in no manner acquiesced in the division made. Their claim and their recovery were in accordance with the legal rights and title of the wife, that is, to seventy five two hundredth parts of the lot, undivided.

Strong having a documentary claim to the one hundred and twenty five two hundredth parts, which he had not to that portion now in question, may, on a recovery against him, have had a right to assert a remedy of this kind, for any improvements he may have made on the land, at least to the extent that Farmer's representative vindicated his claim. Whether any such claim was, or was not, set up against Farmer, or his administrator, on a final recovery by him, does not appear. That it could have been done, *there seems* to be no reason to doubt, unless from the circumstance, that the recovery, as well as the adverse claim, respected, not an entirety, but an interest in common. If that were so, it would equally preclude a recovery here. But we are inclined to think, such an objection would be unavailing in either case,—that he might recover, as against Farmer, not the whole, as he would not reap the benefit of the whole, but to the extent, to which the benefit accrued to him.

Strong et al. *v.* Hunt et ux.

And although, as against Mrs. Phillips, or Mrs. Hunt, he neither had, nor pretended to have had, any documentary title; yet, from the very nature of the common interest, a benefit *pro tanto* accrued to her by the erection of buildings and fixtures upon the common property, and for that reason she ought to be held accountable to the extent of the benefits received.

We think the instructions should have been in conformity to these views.

The judgment of the county court is reversed, and the case is remanded for farther proceedings.